UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NEFTALI AGUILAR LOPEZ (A-Number: 213-304-181), | Case No.  1:26-cv-3527-DAD-JDP |
| Petitioner, | ORDER; FINDINGS AND RECOMMENDATIONS |
| v. | |
| WARDEN, MESA VERDE DETENTION FACILITY, | |
| Respondent. | |

Petitioner Neftali Aguilar Lopez, a citizen of Guatemala, entered the United States in August 2019.  He was re-detained by ICE in March 2026.  Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States without approval on August 1, 2019.  ECF 5 at 6.  He was detained by DHS and then released on his own recognizance the following day.  *Id*. at 7, 10.  Since his release, petitioner has been working and pursuing an asylum claim. ECF 1 at 5-6

On March 18, 2026, petitioner was arrested by local authorities for allegedly driving under the influence.  ECF No. 5 at 15.  ICE was notified of the arrest and detained petitioner that day.  *Id.* at 7.  Respondent provides a rap sheet that shows no charges have been filed.  *See id.* at 15.

1

Other than that arrest, there is no allegation or evidence that petitioner has committed a crime or failed to comply with the terms of his release.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates due process.  ECF No. 1 at 6-8.  Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2).  ECF No. 5 at 1.  Respondent acknowledges, however, that many courts have held to the contrary.  *Id.* at 2.  Respondent does not explain what, if any, binding precedent supports its statutory position.  More fundamentally, respondent's argument is misplaced because it only addresses petitioner's due process rights through the lens of its statutory position.  *Id.* at 2.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."

2

*Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty."  *Id.* at 481-84.

Recently, confronted with issues similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release.  *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F.Supp.3d 1166, 1182 (D. Haw. 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).  I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Respondent concedes that DHS released petitioner into the United States.  ECF No. 5 at 3. Petitioner states that since his entry in 2019, he has been focused on working in a factory and supporting his family.  ECF No. 1 at 6.  He has filed a claim for asylum, with a hearing date in 2027.  *Id.* at 5.  Petitioner has formed "enduring attachments of normal life" over the six years between his release and re-detention.  *See Morrissey*, 408 U.S. at 482.

I conclude that petitioner's initial release and time out of custody have created a

3

constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the six years between his release and re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondent necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a

danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, it gives the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden it would bear as a result of being required to provide a bond hearing. *See* ECF No. 5.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must

5

determine the appropriate remedy.  Petitioner seeks immediate release or, alternatively, a bond hearing.  ECF No. 1 at 17.  Respondent does not address this issue.  *See* ECF No. 5.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.").  To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process."  *Id*. at 128 (cleaned up).  Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy."  *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, there is no evidence, and respondent presented no argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing after being released from local custody.  *See Zinermon*, 494 U.S. at 128. Indeed, respondent does not argue that petitioner is a danger to the community or a flight risk. Moreover, there is no indication that a pre-deprivation hearing was unnecessary because petitioner was already in local law enforcement custody when he was re-detained; on the contrary, courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody.  *See Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-2915-DJC-JDP, 2026 WL 1224248, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted*, 2026 WL 1330554 (E.D. Cal. May 13, 2026)*; Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal.

Mar. 20, 2026).

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

### Conclusion

Accordingly, it is hereby ORDERED that Petitioner's motion to proceed *in forma pauperis*, ECF No. 6, is GRANTED.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 213-304-181) from its custody. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Mesa Verde Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file

objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:   May 29, 2026   _____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE